# WREN *v.* GOODMAN.

EQUITY; LACHES.

Delay by heirs for almost forty years since the youngest of them became of age to assert their alleged equitable ownership of real estate constitutes such laches as will bar relief, where nothing was concealed from them and in the meantime the persons who had full knowledge of the transaction involved have died. (Citing *Fowler* v. *Fowler,* 38 App. D. C. 476.)

No. 2406.   Submitted October 16, 1912.   Decided November 4, 1912.

HEARING   on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia sitting as an equity court vesting the title to certain real estate in certain of the parties to the action.                *Reversed.*

The COURT in   the opinion stated the facts as follows:

This appeal is from a decree in the supreme court of the District vesting title to certain real estate in the appellees, Elmyra M. Goodman and Margaret E. Jones, complainants below, and in Mary J. Boteler, one of the defendants below.

According to the averments of the petition one William Miller died here in 1849, leaving a widow, Mary Miller, and four children, Joanna, born in 1842; Mary, born in 1845; Margaret, born in 1847; and Wilemina, born in 1850. Two of those children, Mrs. Jones and Mrs. Boteler, survive, Mrs. Goodman being the surviving child of the daughter Wilemina, who died in 1880. The daughter Joanna died in 1881 without issue.

The petition further avers, in general terms, that said William Miller died seised and possessed of real estate and per-

sonal property in the city of Washington, and that on the 1st
of December, 1849, letters of administration were granted un-
to the wife, Mary Miller, who qualified and executed a bond in
the penalty of $1,200 before the orphans' court of the District.

The petition further avers that on the 14th day of June,
1856, James Miller, brother of William, made a conveyance
in trust of lot No. 12, square No. 214, on M street, said lot
being 33 feet 6 inches wide and 110 feet deep, and being the
property here in issue, to John Murphy and Nicolas Callan,
for the use and benefit of the children of said William, the
wife, Mary, to have the use and occupation of said property
during her life; further, that in 1851 Mary Miller intermar-
ried with John McKeon. Of this marriage two children were
born, Eva I., now the appellant Mrs. Schmidt, and Eliza V.,
now the appellant Mrs. Wren.

It is further averred that the trustees Murphy and Callan,
on July 2, 1858, executed a conveyance to Mary McKeon, for-
merly Mary Miller, for a nominal consideration, of their in-
terest in said property. This conveyance was duly recorded.
Further, that on August 20, 1869, said Mary McKeon at-
tempted to sell and convey in fee simple to John McKeon, her
husband, the east 16 feet and 9 inches front with the depth of
the lot of the property in question. This conveyance was also
recorded.

It is further set forth that Mary McKeon died in this city
on January 10, 1903, leaving a will in which she devised all
her estate to the complainants and to said Mary Boteler, Eva
I. Schmidt, and Eliza V. Wren; that her husband, John Mc-
Keon, died here in 1908, having remained in possession of the
east half of said lot to the day of his death; that he left a will
devising said half lot to his daughters, Eliza and Eva, and his
infant grandson, Francis A Schmidt.

The petition further alleges that said deed of Murphy and
Callan, trustees, to Mrs. McKeon and the deed of Mrs. Mc-
Keon to her husband, and the two wills above mentioned, con-
stituted a cloud upon complainant's title and that said lot can-
not be divided in kind, a sale and partition being necessary.

The petition prays, therefore, that the cloud of said deeds and wills be removed; that a trustee be appointed in place of Murphy and Callan to convey the legal title to said land, and that it be sold. There is also a prayer for general relief.

To this petition a demurrer was interposed, which was sustained and the case brought here, where the decree was reversed. *Goodman* v. *Wren,* 34 App. D. C. 516. Thereupon, answers were filed, denying that said James Miller had any title or interest in the property involved when he executed said trust deed; that his only apparent title was a certain tax deed dated May 14, 1856, from the corporation of Washington, reciting that said property was sold as the property of Mary Miller for unpaid taxes of 1853; that said tax deed "was and now is wholly null and void and of no effect, for the reason, among others, that the said corporation of Washington upon making the said sale upon which said deed was based wholly failed to file with the recorder of deeds a report in compliance with the provisions of the act of Congress approved February 20, 1819." After noticing the other averments of the petition, the answers set forth that Alexander Borland and his wife, Mary, by deed dated September 15, 1852, which was duly recorded, conveyed in fee simple the land in question to said Mary Miller; that she thereupon went into possession of said property and was in possession thereof at the date of said tax deed to James Miller.

It is further averred that the complainants have not been diligent in pursuing their remedy, and that by reason of such laches the defendants have been unable to avail themselves of the aid and assistance of parties now deceased.

The complainants introduced in evidence a deed from Mary Miller to John H. Wise, dated July 27, 1852, and duly recorded. This deed recites that said Mary Miller was appointed *by the orphans' court* of Washington county in the District of Columbia trustee to sell certain real estate therein mentioned, "the property of William Miller, late of Washington county aforesaid, deceased," being property other than that here in issue, and was *by said court* authorized and directed to sell

said property; that Wise became the purchaser for the sum of $935, the terms of the sale being a down payment of $187, the balance in three promissory notes payable in six, twelve, and eighteen months. No further evidence was offered that the property mentioned in this deed belonged to said William Miller. Mrs. Boteler and Mrs. Jones, daughters of William and Mary Miller as above noted, testified over the objections of the defendants that they had heard their mother say that the purchase by her of the property in question, that is, the Boreland purchase, was with money derived from the proceeds of the sale of the property mentioned in said deed of Mrs. Miller to Wise. Mrs. Boteler was asked how she knew that her mother used the proceeds of the sale to Wise in the purchase of the M street lot, and replied: "I heard my mother say that she did because she hadn't anything else to buy it with. She hadn't any other money that I know of." Mrs. Boteler was born in 1845 and was therefore seven or eight years old when the transactions about which she was testifying occurred. Mrs. Jones, who was born in 1847, testified that her mother "always said * * * the M street property was purchased from his (William Miller's) estate." James Miller, Jr., testified over objection that sometime after his uncle William Miller's death his father, James, and the widow, Mary Miller, "had a kind of settlement, and it appeared my father was indebted to his brother $600, for which he gave the widow six promissory notes at $100 a year, which was paid in six years at 6 per cent interest." It does not appear that Mrs. Miller ever rendered any account to the court as administratrix of her husband's estate.

The defendants, among other things, introduced in evidence said deed of Borland and wife to Mrs. Miller, which recites a consideration of $1,000.

The decree of the court followed the prayers of the petition, and the case is here for review.

*Messrs. Ralston, Siddons, & Richardson,* and *Messrs. Sleman & Lerch* for the appellants.

*Mr. Edmund Burke* for the appellees.

Mr. Justice Robb delivered the opinion of the Court:

It is apparent from the foregoing statement that the case now before us differs materially from the case in the original petition. This is still more apparent from the concession in the brief filed in behalf of appellees relating to the Borland deed, which, as we have seen, conveyed the fee-simple title of the property in question to Mrs. Miller, and which antedated the alleged trust deed set up in the petition. That concession is as follows: "They (the complainants) concede the due execution of the (Borland) deed and the vesting of the legal title in Mary Miller by that conveyance." The complainants, therefore, shifting their position to meet the exigencies of the case, admitted the legality of the Borland deed, but contended nevertheless that the purchase was made with funds belonging to the estate of Mrs. Miller's husband, and hence that she, in making the purchase, took merely the legal title, the equitable title remaining in the heirs at law of William Miller.

At the threshold of the case we are met with the contention of the defendants, that these complainants have been guilty of gross laches, and hence that their petition should be dismissed. Assuming, without deciding, that the evidence of the complainants, above briefly reviewed, would warrant a court of equity in holding that the money with which Mary Miller purchased the property in question was trust money, it becomes apparent that complainants have slept upon their rights for almost forty years, since the youngest daughter of the Millers became of age, in 1871. According to the testimony of the surviving daughters, the Miller children knew before they attained majority all that the two who have testified now know. Nothing was concealed from them by their mother. And yet they not only waited until her death, in 1903, but until after the death of her husband five years later, in 1908; and this long delay, it is apparent, was decidedly prejudicial to the rights of the defendants. The complainants are obliged to rely largely upon the testimony of the two daughters, to the effect that their mother admitted or stated to them that she purchased the property in question with trust

funds, and yet they have waited without any apparent or valid reason until the mother's death and that of her husband, Mc-Keon, whose testimony we may assume would have been of great value to the defendants. Of course, as we have many times said, mere delay in bringing an action of this kind will not of itself establish laches, but where there has been such delay a satisfactory and convincing reason must appear before the one seeking may secure relief. *Fowler* v. *Fowler,* 38 App. D. C. 476, and cases there cited. In our view the facts previously set forth so clearly show laches on the part of these complainants that their petition must be dismissed, and it is so ordered.

Decree reversed, with costs, and cause remanded.

*Reversed.*

Motion to recall mandate and modify decree denied November 27, 1912.